UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X

ANTHONY WRIGHT,

       Petitioner,

 -against-

LEWIS MARSHALL,

       Respondent.

--------------------------------------------------------------- X

05 CV 2280 (ARR)

<u>NOT FOR ELECTRONIC
OR PRINT
PUBLICATION</u>

<u>OPINION AND ORDER</u>

ROSS, United States District Judge:

  The petitioner pro se Anthony Wright ("Wright" or "petitioner") filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 2, 2005. Petitioner claims that he was denied his due process right to a fair trial by the trial court's refusal to grant his request for missing witness consideration at the close of petitioner's bench trial. For the reasons stated below, the instant petition for a writ of habeas corpus is denied.

## BACKGROUND

  On July 25, 2000, petitioner sold $100 worth of crack to an undercover police officer. The undercover had been accompanied by a "ghost" who had parted company with the undercover approximately two blocks from the scene of the purchase and who was responsible for monitoring the undercover officer's safety. Tr. at 109, 68. Petitioner, who apparently had an outstanding warrant on a criminal mischief charge, was arrested the following day. He was convicted on March 12, 2002, following a bench trial, of criminal sale of a controlled substance in the third degree and criminal mischief in the fourth degree. Petitioner was

1

sentenced to seven to fourteen years' imprisonment on the criminal sale count, to run concurrently with a one year sentence on the criminal mischief count.

The undercover officer testified at trial that he was to purchase the drugs alone, and that he had no knowledge of where the ghost was supposed to be during the transaction. Id. at 71. The undercover further testified that the ghost was not with him at the time he approached petitioner to make the purchase or at the time he actually made the purchase inside the foyer of a building. Id. at 76, 83. The undercover indicated that while he and the ghost had left the office in the same car, the undercover had exited the vehicle and parted company with the ghost approximately two blocks from where he ultimately made the purchase. Id. at 106, 109.

At trial, immediately following the undercover officer's testimony, petitioner's counsel requested that the Assistant District Attorney ("ADA") produce the ghost for an interview, on the theory that he might provide testimony to support the defense theory that Wright had not sold drugs to the undercover officer on July 25, 2000. Tr. at 124. After indicating that counsel's "position is noted," the judge continued with the trial. Id. at 125. After both the prosecutor and the defense had rested their cases, petitioner's counsel requested a missing witness charge "because of the People's failure to either call or produce the ghost, so I could call the ghost as a witness." Id. at 181. The ADA represented to the court that the "witness did not have material information or information relevant to a material fact in the case," id., having earlier represented that the ghost was neither in the foyer at the time of the exchange nor directly in front of the house at that time. Id. at 125. The court denied counsel's request for missing witness consideration without specifying the basis for his ruling. Id.

Petitioner appealed his conviction to the Appellate Division, arguing that the trial court had erred in refusing to give a missing witness charge. The Appellate Division affirmed the conviction by order dated December 8, 2003. People v. Wright, 2 A.D.3d 546 (2d Dep't 2003). The court found that petitioner had "waited until both sides rested at the close of evidence to request the charge," concluding that "his request was untimely and thus properly denied." Id. at 547. The court then ruled, "[i]n any event," citing controlling state precedent, that petitioner had "failed to meet his burden of establishing that the undercover police detective was in a position close enough to the transaction to offer material testimony about the seller's identity, and that the detective's testimony would not be cumulative." Id. Petitioner thereafter sought leave to appeal to the New York Court of Appeals, which was denied by order dated January 30, 2004. People v. Wright, 1 N.Y.3d 603 (2003).

Petitioner's conviction became final on April 29, 2004, ninety days after the Court of Appeals denied leave to appeal. Under the applicable statute of limitations, petitioner had until April 29, 2005 to file a habeas petition. The instant petition, although not itself dated, was filed with the court on May 2, 2005. Respondent does not contest the petition's timeliness, and, applying the usual presumption that a mailed document is received three days after it is sent, the court concludes that the petition was timely filed. Sherlock v. Montifiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996).

## DISCUSSION

I. <u>Standard of Review</u>

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly establish Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"[C]learly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Supreme Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court...should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required...the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to

4

suggest judicial incompetence." Frances S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted). This deferential standard applies whenever the state court has adjudicated the federal claim on the merits, even if it did not explicitly refer to the federal claim or discuss the reasoning for its decision, as long as the decision finally resolved a party's claims and was based on the substance of the claim advanced, rather than on a procedural ground. Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001).

II. Procedural Bar

Federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice. Fama v. Commissioner of Correctional Services, 235 F.3d 804, 809 (2d Cir. 2000) (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); Harris v. Reed, 489 U.S. 255, 262 (1989)). In order for federal review to be procedurally barred, the state court's reliance on state law must be "clear from the face of the opinion." Id. (internal quotation marks and citation omitted). The Second Circuit held in Fama that where the state court uses language such as "the defendant's remaining contentions are either unpreserved for appellate review or without merit" the claim is subject to federal review. Id. at 810-11. The court's decision in Fama did not overturn prior rulings, however, that a state court decision constitutes a procedural default where the court stated that a claim was "not preserved for appellate review" before ruling "in any event" on the merits. Id. at 810n.4.

Only a "firmly established and regularly followed state practice" or rule may constitute a procedural default that prevents subsequent review by a federal habeas court of a federal constitutional claim. James v. Kentucky, 466 U.S. 241, 348-49 (1984). Although "firmly

established and regularly followed" state rules are ordinarily adequate to foreclose federal habeas review, circumstances exist in which such a rule would be inadequate to preclude habeas review. Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citing Lee v. Kemna, 534 U.S. 362, 386-87 (2002)). In Cotto, the Second Circuit identified three "guideposts" to be considered when evaluating whether the state court's reliance on a procedural rule is adequate to constitute a procedural default:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given the 'realities of trial,' and, therefore, whether demanding perfect compliance with the rule would have served a legitimate governmental interest.

Id.

Where a state court rules against a petitioner on procedural grounds, the petitioner faces a "procedural default" precluding federal habeas review. A procedural default may be excused by a federal court, however, if the petitioner demonstrates either cause for the default and actual prejudice from the alleged violation of federal law, or that the failure to consider the claims will "result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." Murray v. Carrier, 477 U.S. 478, 496 (1986). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). A petitioner establishes actual innocence by demonstrating that "in light of all the evidence, it is more likely than not that no reasonable

juror would have convicted him." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (internal quotation marks and citations omitted).

III. <u>Merits of Petitioner's Claim</u>

Petitioner claims that he was denied his due process right to a fair trial by the trial court's refusal to give missing witness consideration in light of the fact that the ghost accompanying the undercover officer on the controlled drug buy leading to petitioner's arrest did not testify at petitioner's bench trial. Respondent first argues that petitioner's claim is procedurally barred, given the Appellate Division's ruling that counsel's request, made after the close of evidence, was untimely. Respondent has not cited a single case in which a federal habeas court has found such a claim to be procedurally barred when counsel requested the charge after the close of evidence. The court also notes, considering the first <u>Cotto</u> factor, that the trial court apparently did not rely on a procedural rule in denying counsel's request. Moreover, of relevance to the third <u>Cotto</u> "guidepost," the court finds it unlikely that demanding perfect compliance with the rule identified by respondent would have served a legitimate governmental interest in light of the fact that petitioner had waived his right to a jury trial and consented to a bench trial. As a result, the court will consider petitioner's claim on the merits and must determine whether the state court's ruling was contrary to or involved an unreasonable application of Supreme Court precedent.

A state trial court's jury instruction, such as a missing witness charge, is ordinarily a matter of state law.[1] A trial court's failure to give a missing witness instruction, like any other

---

[1] The court acknowledges that the instant petition involves a bench trial but discusses the issue in terms of "jury instructions" given that the parties have done so in their submissions.

7

jury instruction, does not raise a constitutional issue and cannot serve as the basis for federal habeas relief unless the failure "so infected the entire trial that the resulting conviction violated due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973). "Whether a missing witness charge should be given lies in the sound discretion of the trial court." Reid v. Senkowski, 961 F.2d 374, 376 (2d Cir. 1992). Moreover, "decisions in this area will rarely support reversal or habeas relief since reviewing courts recognize the 'aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense' than any reviewing court." Malik v. Kelly, 97 Civ. 4543, 1999 WL 390604, *7 (E.D.N.Y. Apr. 6, 1999) (quoting United States v. Torres, 845 F.2d 1165, 1171 (2d Cir. 1988) (internal quotations and citation omitted)).

Under New York law, the party seeking a missing witness charge must sustain an initial burden of showing that the opposing party has failed to call a witness who is under its control, has knowledge regarding a material issue in the case, and could be expected to provide testimony favorable to the opposing party. People v. Gonzalez, 68 N.Y.2d 424 (1986). The burden then shifts to the opposing party to account for the witness's absence or otherwise demonstrate that the charge would not be appropriate. This burden can be met by demonstrating, inter alia, that the witness is not knowledgeable about the issue or that the testimony would be cumulative. People v. Macana, 84 N.Y.2d 173 (1991).

In the instant case, the trial court denied counsel's request for a missing witness charge immediately following the ADA's representation that the ghost did not have material information "or information relevant to a material fact in the case." Tr. at 181. The Appellate Division, after citing the procedural grounds for affirming the conviction, noted that petitioner

had failed to sustain his burden of establishing that the ghost had material knowledge of petitioner's identity or that the testimony would not be cumulative. 2 A.D.3d at 547. Having reviewed the record, the court finds that it was reasonable for the trial court and the appellate courts to conclude, in light of the undercover officer's testimony and the ADA's representations, that the ghost officer had no material knowledge of petitioner's identity. As a result, the court cannot conclude that the state court's ruling involved an unreasonable application of Cupp or that it amounted to a constitutional violation of any kind. Habeas relief is not warranted on this claim.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims, since the petitioner failed to make a substantial showing of any denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: July 27, 2005
Brooklyn, New York

9

SERVICE LIST:

Petitioner *Pro Se*
Anthony Wright
02A1812
Wallkill Correctional Fac.
Route 208
Box G
Wallkill, NY 12589-0286

Attorney for Respondent
Malancha Chanda
Office of the New York State Attorney General
120 Broadway
22nd Floor
New York, NY 10271